PELEG BAILEY, et al., vs. LEMUEL SISSON, et. al.

Courts of Equity have jurisdiction to award partition of estates, whether corporeal or incorporeal.

A. B. & C., owners of lands adjoining to, and with the right reserved by will of passing and re-passing over and upon, the lands of D. & E., in order to cart " sea weed and sand, at any time when they should see fit, and tip it out in a heap, where it should be most convenient and least prejudicial, and cart it off at their leisure," together with said D. & E., submitted by rule of Court to referees their differences of opinion as to the nature and effect of the above named reservations and privileges, contained in the will, and as to the manner of enjoying the same, with all questions growing out of the intent and meaning of said will, and the referees reported thereon, declaring the legal effect of the reservations in the will and prescribing the manner of collecting, depositing in heaps, and carting across the lands of said D. & E. the above mentioned sea-weed and sand, which report was confirmed by the Court. *Held*, that said report only defined and settled the joint rights of the parties and provided for their enjoyment as joint rights, and did not operate as a partition.

THIS was a bill in equity for partition.

The facts are fully stated in the opinion of the Court, delivered by GREENE, C. J.

The bill states that Isaac Bailey, deceased, made his last will, bearing date the twenty-fifth day of August, A. D. eighteen hundred and thirteen, and therein devised a certain farm, called in the will the White Farm, to his son, Tillinghast Bailey ; the farm, called the Homestead Farm, to his son, Abraham Bailey, and the lands, called in the will the Manchester Pasture, and the land, described in the will as the land the testator purchased of John Bailey and the Widow Headen, to his son, Peleg Bailey, one of the orators ; all said farms and lands are situated in Little Compton.

The White farm bounds on the sea, and has an extensive beach, on which sea weed drifted and lodged. The testator, in his life time, carted the sea-weed and sand and gravel from the beach, as he saw fit, for the benefit of any and all the farms, devised to his three sons. The clause devising the White farm is as follows :

" *Item.* I give to my beloved son Tillinghast, all my farm, called the White farm, with all the buildings, privileges and appurtenances thereunto belonging, excepting what I have already given away in this my will; reserving a privilege for my two other sons, Abraham and Peleg, to pass and repass to the beach, and there to cart up sea-weed and sand, at any time when they shall see fit, and tip it out in a heap, where it shall be most convenient and least prejudicial, and cart it off at their leisure : The way, which I do point out, is through the pasture which we now go, to the north end of the Beach meadow, and through that to the Beach ; and my son Tillinghast, shall have a right to pass and repass up to the road as we now go."

Peleg Bailey, one of the orators and owner of the lands devised to him, claims, as appurtenant to the same under the reservation aforesaid, one undivided third part of said Beach, sea-weed and sand.

The other Plaintiffs, Joseph Coe and Ezra Coe, own the Homestead Farm, which was devised to Abraham Bailey, and they claim, as appurtenant to said farm under said reservation, one undivided third of said Beach, sea-weed, sand, &c.

The bill alleges, that the defendants, Samuel Sisson and David Sisson, claim an interest in the said Beach, sand, &c., but their title is unknown to plaintiffs. The bill alleges, that Isaac Bailey, the testator, owned a cer-

tain other beach, also situate in Little Compton, and adjacent and near to the lands owned by Thomas B. Grinnell, one of the defendants, and claims for the Plaintiff this Beach, but no proof of title has been put in.

The bill also alleges, that the said Thomas B. Grinnell claims an interest in this Beach, but the Plaintiffs know nothing of his title. Grinnell has not answered and the Plaintiffs have not proceeded against him, by taking a decree *pro confesso*, or in any other way, and no decree is asked by either party in relation to this Beach.

The prayer of the bill is for a fair partition of the premises and the enjoyment thereof, and that such partition be made by metes and bounds, or by the apportionment and allotment of particular times for the use thereof, as shall best conduce to justice and equity.

Lemuel Sisson and David Sisson file a joint answer, in which they allege, that they are seized and possessed of the White Farm and of about eight acres of the Homestead Farm, and claim an interest in the privilege, as part owners of the Homestead Farm, in the proportion in which they own the same. They also claim a right in the Beach, adjacent to the land of said Grinnell, the rights to which the answer admits are undivided.

But in relation to the White Farm Beach, the answer asserts, that the rights of the Plaintiffs and Defendants, therein, have been settled and divided by a report of referees, which report was made under a rule of Court, entered into by the Plaintiffs and the said Lemuel Sisson and David Sisson—a copy of the submission and the report of the referees being annexed to the answer. The report was made to the September term, A. D. 1841, of the Supreme Court for the county of Providence, and

was confirmed by the Court, at the same term. The Plaintiffs have put in no proof of title to the Grinnell Beach.

The title of the Plaintiffs and of the defendants, Lemuel Sisson and David Sisson, to the White Farm Beach is not disputed. The only question in the case is, shall partition of the easement between the respective parties be decreed. The jurisdiction of Chancery over partition has been established by a long series of decisions, both in England and in this country, and it has been found by experience to be a jurisdiction of great public convenience. The necessity of a discovery of titles, the inadequacy of the remedy at Law, the difficulty of making the appropriate and indispensable compensatory adjustments, the peculiar remedial processes of a Court of Equity, and its ability to clear away all intermediate obstructions against complete justice, have induced Courts of Equity to assume a general concurrent jurisdiction with Courts of Law over all cases of partition. (Story's Equity Jurisprudence, page 610-11. Sec. 658, and the cases cited. 4 Kent's Com. 364 and cases cited note a, b, c.) In England by statute of 3 and 4 William 4th c. 27, the writ of partition is abolished, and the only mode of enforcing partition is by Bill in Equity, (4 Kent 364 note a,) and equity will entertain jurisdiction over partition of incorporeal hereditaments, as well as corporeal. Indeed, a Court of Law is less able to administer complete justice in partition of the former, than the latter, and therefore, the partition of incorporeal hereditaments is peculiarly an appropriate subject of equitable jurisdiction. Thus equity will entertain a bill for division of tithes, and this, although they cannot be divided at Law. *Baxter vs. Knolly*, (1. Ves. Sen. p. 494.

Allnatt on Partitions, page 84.) A bill has been sustained for a division of a manor, *Sparrow vs. Fiend*, (Dick 348,) so of an advowson, *Bodicoate vs. Steers* (Dick 69.) *Mathews vs. Bishop of Bath and Wells*, (Dick 652.) So far then as jurisdiction and the nature of the right are concerned, we think this Court has power to award a partition.

The remaining and principal question in the cause arises from a submission by rule of Court to referees, and their report, which are set up in the answer of the Sissons, as a partition of the rights of the parties and a bar to the present bill.

The case then turns upon the effect of the reference and the report. In the petition to the Court for the appointment of the referees, the subjects of the reference are particularly stated as follows : " Whereas differences of opinion have arisen by and between the parties, as to the nature, extent, and effect of the reservation and privileges, contained in said will, in favor of the said Abraham and Peleg, as to the passing and repassing to the Beach, carting, tipping up and depositing sea-weed and sand on the soil, devised to the said Tillinghast, where it should be most convenient and least prejudicial, and of carting the same off at their leisure, and as to the location of the way or ways, which should be used and travelled by them for that purpose, through the Beach meadow, named in said will, and whether said reservation, according to the true intent and meaning of said will and the law affecting the same, is limited to the lives of the said Abraham and Peleg, respectively, or, whether the same descends to their respective heirs and grantees, as appurtenances to the soil and estates so devised to

the said Abraham and Peleg, and, if so, in what proportions, and, in what way and manner, the same should be used and improved ; which difference of opinion, with all others arising under or growing out of the true intent and meaning of said will, touching the premises, devised as before stated, they are desirous of having correctly and definitely settled.''

There does not appear to be any suggestion in all this of the idea of a partition, and an enjoyment in severalty by the parties, although these are known and familiar terms, and one would suppose the parties would have used them, if they intended what these terms import.

The authority to determine the way and manner, in which the privilege should be used and improved, it is contended, implies an authority to make partition of the privilege ; but these terms, we think, apply as well to a joint as to a several right.  There are important questions, as to the way and manner of using and improving this privilege, as a joint right, and which the report of the referees has settled.  The change from a joint to a several enjoyment of the rights of the parties by partition is a most important one, and they ought not to be held to have conferred any authority to make it, by words of doubtful construction.

But let us examine the report to see what the referees have done.  The report determines, that the privilege is not limited to the lives of Abraham and Peleg, but is appurtenant to the soil devised to them, that the plaintiffs have the right to take, cart off and use, from said Beach, sea-weed and sand in equal proportions with said Sissons ; that the plaintiffs have the right to use only one way, in passing and repassing to and from said Beach, through the pasture and Beach meadow mentioned in

said will. That they have no right to cut and carry away rock-weed, growing and adhering to the rocks on said Beach, but their right, under said reservation, is limited to the sea-weed and sea-drift of every description, ordinarily used for manure, which shall float or drift on to the Beach.

The report goes on to state : " And whereas we are required, in accordance with said petition, to determine in what way and manner said privilege should be used and improved, in order to prevent misunderstanding and difficulty in relation to the rights of the said parties, and the better to enable them to use and improve the same ; we do further determine and award, that the said parties, their heirs and grantees or the legal owners of the aforesaid devised premises, respectively, by collecting into heaps sea-weed and sand, on any part of said Beach, preparatory to and for the purpose of carting the same off, shall be deemed and considered to have appropriated the same to their own use ; provided, however, that whenever said Ezra Coe, or Joseph Coe, or Peleg Bailey, or either of their heirs or grantees, or legal owners of said premises devised to said Abraham Bailey as aforesaid, shall heap sea-weed or sand on said Beach, in more than one heap, they shall cause the same to be put into one heap, in any convenient place on said Beach, below the wall, within *two days* from the time of collecting such sea-weed or sand into heaps, and may then cart the same away at their leisure, agreeably to the provisions of said will, or may cart the same away from said Beach within said two days ; otherwise, such collecting into heaps shall not be deemed and considered an appropriation of such sea-weed or sand to their use.

But sea-weed and sand which shall be collected into heaps by said Lemuel Sisson and David Sisson and their heirs, or the grantees or legal owners of the soil and premises, devised to said Tillinghast Bailey as aforesaid, may be removed by them at any time thereafter.

And for the purpose of carting sea-weed and sand from said Beach, said Ezra Coe, and Joseph Coe, and Peleg Bailey, and their heirs and the grantees or legal owners of said premises, devised to said Abraham Bailey and Peleg Bailey as aforesaid, shall have a right of way to pass and repass to and from said Beach, only in one way through the pasture and Beach meadow, mentioned in said will, being the way now usually travelled and running in a southerly direction through said Beach meadow, near the wall to said Beach."

Now, we do not perceive any thing in all this, which amounts to partition, or which provides for or contemplates an enjoyment by the parties *of their rights* in severalty. Each party has a right, under this report, to go on to the Beach and to any part of it and collect into heaps at the same time, and the sea-weed does not become several property, until it has been collected into heaps by the parties. While it lies on the Beach, it remains the common property of all. And, in this respect, leaves the rights of the parties as they were under the will ; *giving a judicial construction of the will.* It merely declares, what acts of the parties shall convert the sea-weed and sand from joint to several property, but until the conversion in the mode pointed out, the sea-weed and sand remain common property. Such a decision was indispensable to the peaceful and profitable occupation of the joint rights, but cannot be regarded, in any aspect as a partition.

Peleg Bailey, et al., *v.* Lemuel Sisson, et al.

But the report goes further, and, while it authorises the plaintiffs to cart into more heaps than one, it provides that unless these heaps are collected into one, within two days thereafter, in some convenient place on said Beach below the wall, they shall again become common property.

It appears to us that the referees intended, by their report, to define and settle the joint rights of the parties, and provide for their enjoyment as joint rights. The report purports to decide and does decide all the subjects referred to them, and, we think, they have put the right construction on their powers under the submission. It is true, in their first report, they did make partition of the right, by allotment of time, but the report was re-committed to the referees, who made their second report, which is the one set up as a bar to the present bill.

Decree. That partition be made of the said right to take sea-weed and sand from the White Farm beach, in proportions corresponding to the respective interests of the parties in the lands, to which said right is appurtenant ; and that commissioners be appointed to make said partition, either by metes and bounds, or by apportionment of time of taking said sea-weed and sand from said Beach, as may be most for the interest of all the parties entitled ; this decree not to prejudice the rights of Thomas B. Grinnell.